Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| Banco Popular de Puerto Rico<br><br>**Demandante-Recurrido**<br><br>V.<br><br>Damaris Rodríguez Rabelo y Funmar Corporation<br><br>**Demandadas-Peticionarias** | TA2026CE00411 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2022CV05136<br><br>Sobre: Ejecución de Hipoteca: Propiedad Comercial |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de abril de 2026.

El 6 de abril de 2026, la Sra. Damaris Rodríguez Rabelo y Funmar Corporation (en conjunto, las peticionarias) comparecieron ante nos mediante *Petición de Certiorari* y solicitaron la revisión de una Orden de Ejecución de Sentencia que se emitió el 28 de enero de 2026 y se notificó el 29 de enero de 2026 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI ordenó la venta en pública subasta de dos (2) fincas para satisfacer el importe de la *Sentencia* que se dictó y notificó el 18 de febrero de 2025.

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

I.

El 13 de junio de 2022, el Banco Popular de Puerto Rico (BPPR o el recurrido) presentó una *Demanda* sobre cobro de dinero y ejecución de prenda e hipotecas contra las peticionarias.[1] En

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

respuesta, el 1 de diciembre de 2022, las peticionarias presentaron su alegación responsiva.[2]

Luego de varios trámites procesales que no son pertinentes discutir, el 18 de febrero de 2025, el TPI emitió y notificó una *Sentencia* por la vía sumaria.[3] En esta, declaró Ha Lugar la *Demanda*, adoptando por referencia los hechos incontrovertidos expuestos en la sentencia sumaria presentada por el BPPR, así como el derecho allí argumentado. En consecuencia, ordenó a las peticionarias a satisfacer solidariamente al recurrido la suma líquida, vencida y exigible de $637,934.12 en concepto de principal. Asimismo, le impuso el pago de $25,056.63 por concepto de intereses acumulados desde el 13 de junio de 2022 hasta el 5 de enero de 2024, los cuales continuarán acumulándose a razón de $115.18 diarios hasta la satisfacción total de la obligación, más los cargos por mora, adelantos, y $75,500.00 en concepto de costas, gastos y honorarios de abogado conforme a lo pactado.

Así las cosas, el 20 de marzo de 2025, las peticionarias comparecieron ante el Tribunal de Apelaciones (TA) mediante una *Apelación,* caso núm. KLAN202500235, impugnando la referida *Sentencia.* Atendido el recurso, un panel hermano emitió una *Sentencia* desestimándolo por falta de jurisdicción, debido al incumplimiento con la Regla 14(B) del Reglamento del Tribunal de Apelaciones.[4] Inconformes, el 3 de junio de 2025, las peticionarias presentaron una solicitud de reconsideración ante el TA, pero ésta fue denegada mediante una *Resolución* que se dictó el 6 de junio de 2025 y se notificó el 12 de junio de 2025.[5]

---

[2] *Véase*, Entrada Núm. 17, SUMAC TPI.
[3] *Véase*, Entrada Núm. 82, SUMAC TPI.
[4] *Véase*, Entrada Núm. 86, SUMAC TPI.
[5] Cabe precisar que, a modo de gestión administrativa, solicitamos a la Secretaría de este Tribunal el préstamo de una copia del expediente correspondiente al caso núm. KLAN202500235, con el propósito de corroborar la totalidad del trámite apelativo en dicho caso, así como las gestiones realizadas ante el Tribunal Supremo.

En vista de lo anterior, el 14 de julio de 2025, las peticionarias presentaron un recurso de *certiorari,* identificado con la designación alfanumérica CC-2025-0436, con el propósito de revisar dicha determinación. No obstante, el 10 de octubre de 2025, el TS emitió una *Resolución* mediante la cual denegó el recurso. En atención a esta denegatoria, las peticionarias presentaron las dos (2) solicitudes de reconsideración que permite nuestro ordenamiento jurídico ante dicho foro; sin embargo, ambas fueron igualmente denegadas. Finalmente, una vez el TPI recibió los mandatos del TA y del TS, recobró jurisdicción para continuar con los procedimientos.[6] En consecuencia, la *Sentencia* dictada el 18 de febrero de 2025 advino final y firme.

A tales efectos, el 27 de enero de 2026, el BPPR presentó una *Moción Solicitando Ejecución de Sentencia* mediante la cual pidió que se ordenara la ejecución y venta en pública subasta de las fincas hipotecadas para satisfacer la *Sentencia* del presente caso.[7] Atendida la referida solicitud, el 28 de enero de 2026 el TPI dictó una *Orden* que se notificó el 29 de enero de 2026 acogiendo la solicitud antes descrita.[8] En consecuencia, ordenó la venta en pública subasta de dos (2) fincas para satisfacer el importe de la *Sentencia* que se dictó y notificó el 18 de febrero de 2025.

En desacuerdo con esta *Orden,* el 31 de enero de 2026, las peticionarias presentaron una *Reconsideración e Intención de Presentar Recurso de Certiorari ante el Tribunal Supremo de los Estados Unidos de Norteamérica.*[9] En esencia, sostuvieron que el TPI le privó de la oportunidad de expresarse en torno a la solicitud de ejecución de sentencia. Expresaron que, ante tales circunstancias, y con el propósito de evitar un resultado contrario a la justicia,

---

[6] *Véase,* Entradas Núm. 95 y 96, SUMAC TPI.
[7] *Véase,* Entrada Núm. 97, SUMAC TPI.
[8] *Véase,* Entrada Núm. 98, SUMAC TPI.
[9] *Véase,* Entrada Núm. 99, SUMAC TPI.

procedía que el TPI reconsiderara y dejara sin efecto la referida *Orden*. Asimismo, manifestaron su intención de acudir en *certiorari* ante el Tribunal Supremo de los Estados Unidos para solicitar la revisión de las determinaciones previamente emitidas, conforme a las disposiciones legales aplicables.

El 23 de febrero de 2026, el BPPR presentó una *Oposición a la Solicitud de "Reconsideración"* [...].[10] Argumentó que el escrito presentado por las peticionarias, titulado como reconsideración, no constituía una verdadera solicitud de reconsideración, sino un mero anuncio de la posible radicación de un recurso de *certiorari* ante el Tribunal Supremo de los Estados Unidos. Señaló que dicho escrito incumplía con los requisitos de especificidad exigidos por la Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47 por lo que debía ser denegado de plano.

Asimismo, señaló que la eventual presentación de dicho recurso era especulativa e hipotética, y que, en todo caso, la revisión mediante *certiorari* ante el Tribunal Supremo de los Estados Unidos no era un derecho y tenía probabilidades sumamente limitadas de ser acogida, las cuales, según planteó, eran nulas en este caso por falta de jurisdicción.

Finalmente, sostuvo que las peticionarias tuvieron amplias oportunidades para plantear sus argumentos ante el Tribunal de Primera Instancia, el Tribunal de Apelaciones y el Tribunal Supremo de Puerto Rico, los cuales fueron considerados y rechazados. Por tanto, concluyó que no existía fundamento válido para continuar dilatando la ejecución de una sentencia que era válida y advino final y firme.

Evaluados los escritos de ambas partes, el 3 de marzo de 2026, el TPI dictó y notificó una *Resolución Interlocutoria* denegando

---

[10] *Véase*, Entrada Núm. 105, SUMAC TPI.

la solicitud de reconsideración.[11] Aún inconforme, el 6 de abril de 2026, las peticionarias presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DICTAR ORDEN DE EJECUCIÓN DE SENTENCIA SIN HABERLE CONCEDIDO OPORTUNIDAD A LA PARTE RECURRENTE DE FIJAR SU OPOSICIÓN A LA MOCIÓN SOLICITANDO EJECUCIÓN DE SENTENCIA DE LA PARTE RECURRIDA.**

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL FORO DE INSTANCIA AL DENEGAR LA MOCIÓN DE RECONSIDERACIÓN DE LA PARTE RECURRENTE.**

Sin embargo, al examinar detenidamente la *Petición de Certiorari*, advertimos que la discusión de los señalamientos de error no se dirige propiamente a impugnar la orden de ejecución de sentencia. Por el contrario, las peticionarias pretenden relitigar asuntos que ya advinieron finales y firmes. En esencia, intentan replantear los mismos argumentos previamente esgrimidos en la apelación del caso núm. KLAN202500235; determinación que las peticionarias impugnaron mediante recurso de *certiorari* ante el Tribunal Supremo, el cual fue posteriormente denegado.

A pesar de lo anterior, y en aras de contar con el beneficio de la comparecencia de todas las partes, el 8 de abril de 2026 emitimos una *Resolución* concediéndole a la parte recurrida hasta el 26 de abril de 2026 para presentar su postura en cuanto al recurso. Oportunamente, el BPPR presentó su *Oposición al Recurso de Certiorari* y negó que el TPI cometiera los errores que las peticionarias le imputaron. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

## II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v.*

---

[11] *Véase*, Entrada Núm. 106, SUMAC TPI.

*Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

Es importante destacar que, al interpretar la Regla 52.1 de Procedimiento Civil, *supra,* el Tribunal Supremo resolvió que "las resoluciones atinentes a asuntos postsentencia [como la que tenemos ante nuestra consideración] no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari.* De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso." *IG Builders et. al. v. BBVAPR,* 185 DPR 307, 339 (2012). Establecido lo anterior, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró, supra.* La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando éste haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro

deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones